ORDERED.

Dated: August 30, 2018

_____
Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

ROBERT KENNY JR. and CLAUDIA KENNY,
CHRISTOPHER J. CONLON,

    Debtors.
_____/

SCOTT M. BRYANT AND COMPANY, LLC,
an Alabama limited liability company,

    Plaintiff,
v.

ROBERT KENNY JR., CLAUDIA KENNY, and
CHRISTOPHER J. CONLON,

    Defendants.
_____/

Chapter 7
Case No. 3:17-bk-2860-PMG
Case No. 3:17-bk-2435-JAF

Adv. Pro. No. 3:17-ap-0166-JAF
Adv. Pro. No. 3:17-ap-0201-JAF
(Consolidated for Trial Only)

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

    These two adversary proceedings came before the Court for trial. Both adversary proceedings were filed by Plaintiff SCOTT M. BRYANT AND COMPANY, LLC (the "Plaintiff"), seeking to except $712,140 of a judgment debt from discharge, pursuant to 11 U.S.C.

§ 523(a)(2)(A). The complaints were filed against debtors in different bankruptcy cases. The two proceedings were consolidated for trial. Trial occurred on May 16, 2018. The parties filed written briefs on July 3, 2018. Upon the evidence and arguments presented, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## BACKGROUND

In June 2017, Debtor CHRISTOPHER J. CONLON ("Conlon") filed a petition under Chapter 7 of the Bankruptcy Code, which became case no. 3:17-bk-02435-JAF. In August 2017, Debtors ROBERT KENNY JR. and CLAUDIA KENNY (collectively, the "Kennys") filed a joint petition under Chapter 7, which became case no. 3:17-bk-02860-PMG. In October 2017, the Plaintiff filed a complaint against Conlon in what became proceeding no. 3:17-ap-0166-JAF. In November 2017, the Plaintiff filed a similar complaint against the Kennys in what became proceeding no. 3:17-ap-0201-PMG (now 3:17-ap-0201-JAF). The proceeding against the Kennys was transferred and consolidated with the proceeding against Conlon for purposes of trial.

## FINDINGS OF FACT

In November 2009, the Plaintiff and the three Defendants agreed to engage in business to bring a large touchscreen product to market for the benefit of hotels, malls, and other retail sites. The product was to be marketed, leased, and serviced through a company named Hyperscreen LLC ("Hyperscreen"), which was owned by the Plaintiff and, indirectly, by Defendants. The Plaintiff is owned and controlled by Scott Bryant ("Bryant"). Negotiations between the parties began in early 2009. According to Bryant's testimony, he is a sophisticated businessperson with experience in operating successful businesses. Bryant (and the Plaintiff) engaged with Defendants to stake out new business opportunities and supplement the Plaintiff's revenue after the recession of 2008.

In May 2008, prior to the Plaintiff's involvement, Hyperscreen was organized as a Florida limited liability company. Hyperscreen's original members were two entities named Captiveye, Inc. ("Captiveye") and Hyper LLC ("Hyper").[1] Defendant Robert Kenny owned Captiveye and Defendant Conlon owned Hyper. Prior to Plaintiff's involvement, Hyperscreen focused on selling the touchscreens to be used as sales tools for timeshare properties. Wyndham Hotels ("Wyndham") used these devices to sell timeshare properties to consumers staying at some of its more remote hotels. Eventually, the 2008 financial crisis hampered timeshare sales and caused Wyndham to stop placing orders for new screens. However, in September 2008, just before the Plaintiff and Defendants began negotiations, Wyndham and Captiveye entered into a service contract (the "Master Services Agreement") in which Captiveye agreed to service and maintain the subject hardware/equipment. (Doc. 30-1 at 2, in no. 3:17-ap-0166). The Master Services Agreement was renewable from year to year and could be unilaterally cancelled by Wyndham.

Following the economic recession of 2008, the Defendants sought outside capital to pay off existing debt and to adapt the technology and business model to other consumer contexts. As stated above, Defendants and the Plaintiff began negotiations in early 2009 and ultimately consummated an agreement in November 2009. The arrangement was formalized in the Amended & Restated Operating Agreement of Hyperscreen LLC (the "Operating Agreement"). (Doc. 28-2 at 2, in no. 3:17-ap-0166). The Plaintiff's attorneys drafted the detailed Operating Agreement.

Pursuant to the Operating Agreement, the Plaintiff became a 35% owner of Hyperscreen while another entity named Head High Holdings LLC became a 65% owner of Hyperscreen. The Defendants collectively owned Head High Holdings. The Operating Agreement did not address the Master Services Agreement between Wyndham and Captiveye.

---

[1] Hyperscreen and Hyper are distinct entities.

Ultimately, the business endeavor failed. The Plaintiff sued Defendants in Alabama state court for direct and derivative versions of various claims, such as corporate waste, shareholder oppression, breach of fiduciary duty, breach of duty of loyalty, and conspiracy. (Doc. 26-61 at 2, in no. 3:17-ap-0166). The case went to arbitration (Doc. 26-62), which resulted in an award in favor of the Plaintiff (the "Arbitration Award"). (Doc. 26-63, in no. 3:17-ap-0166). The Arbitration Award was confirmed by the Alabama court in June 2017. (Doc. 26-64, in no. 3:17-ap-0166). The Defendants did not object to confirmation of the award or seek judicial review of the award. The Alabama court entered judgment against Defendants, jointly and severally, for approximately $1.2 million. Plaintiff now seeks to except from discharge $712,140 of the judgment debt as a debt obtained by actual fraud under § 523(a)(2)(A) of the Bankruptcy Code.

The Arbitration Award

The Arbitration Award found that, in 2009, the Plaintiff began funding Hyperscreen's new efforts by paying off Captiveye's creditors and by providing $20,000 per month to Hyperscreen for salaries and expenses. In 2011, the Plaintiff began voicing a reluctance to provide further funding. The Plaintiff received two payments of $100,000 each, in 2011 and 2012, in return for a portion of the funding provided. Until 2014, the Plaintiff was responsible for the financial oversight of Hyperscreen; however, in 2014, all books and financial records were transferred to the Defendants' control. Beginning in 2014, the Defendants operated Hyperscreen without any input from the Plaintiff. The Defendants' running of Hyperscreen lasted until 2016 when Wyndham "abruptly terminated" the Master Services Agreement.

At arbitration, like here, the Plaintiff claimed the parties agreed to assign the revenue from the Master Services Agreement to Hyperscreen (the "Wyndham revenue"). The only evidence supporting this was the testimony of Bryant, the owner and president of the Plaintiff, and Shelli

4

Garret, Bryant's aide. The Defendants testified that no such agreement was made. Ultimately, the Arbitration Award found Bryant more credible and determined that the Defendants breached a duty to assign the Wyndham revenue to Hyperscreen. The Award determined the Plaintiff, as 35% owner of Hyperscreen, was entitled to 35% of the Wyndham revenue.

Trial Testimony

At trial before this Court, Bryant testified that the agreement was to "clean up" Captiveye and "collapse" Captiveye into Hyperscreen, which entailed assigning the Wyndham revenue to Hyperscreen. Bryant testified that Captiveye was discussed in negotiations in the lead up to signing the Operating Agreement in November 2009. Bryant explained,

> Since Captiveye had the contract with Wyndham and because Captiveye was upside down and in debt, the agreement was that we'd clean up Captiveye. Because as long as [Robert] Kenny owned controlling interest of Captiveye, he had assignability of that contract. So get Captiveye clean, collapse Captiveye, transfer the contract from Captiveye to the new entity that we all agreed to form, Hyperscreen, to then move forward with the existing business model and develop other platforms that they [Defendants] were currently working on.

(Trial Tr. at 14-15).[2]

Defendants testified there was no promise or agreement to assign the Wyndham revenue from Captiveye to Hyperscreen. Claudia Kenny and Conlon also testified that they never intended to assign the Wyndham revenue in the context of their broader testimony that there was never an agreement to assign the Wyndham revenue to Hyperscreen. The Defendants have never conceded that such an agreement was reached.

The Court is not persuaded that Defendants intended to deceive Bryant or the Plaintiff. The Court finds the testimony of the Defendants credible. As discussed further below, while the

---

[2] The trial transcript can be found at (Doc. 44, in no. 3:17-ap-0166).

Court accepts the findings of the Arbitration Award, the Court finds that the Defendants did not make a promise to Bryant or the Plaintiff with intent to deceive or with any other fraudulent intent.

## CONCLUSIONS OF LAW

### A. *Collateral Estoppel*

"Collateral estoppel prevents the same parties from relitigating issues that have previously been litigated and determined." Modern, Inc. v. Florida Dept. of Transp., 381 F. Supp. 2d 1331, 1344 (M.D. Fla. 2004). Under Florida law, collateral estoppel applies where: (1) the identical issues were presented in the prior proceeding; (2) there was a full and fair opportunity to litigate the issues in the prior proceeding; (3) the issues in the prior litigation were critical and necessary to the prior determination; (4) the parties were identical; and (5) the issues were actually litigated in the prior proceeding. Id.[3] Collateral estoppel can apply to a judicially confirmed arbitration award where the elements of collateral estoppel are met. See In re Cassidy, 352 B.R. 519, 525 (Bankr. M.D. Fla. 2006). However, where an arbitration award does not provide findings or legal analysis such that it is unclear whether all the elements of collateral estoppel have been met, there may be an insufficient basis to apply collateral estoppel. See id.

Here, the Court accepts the Arbitration Award's findings that Defendants failed to fulfill their promise to assign the Wyndham revenue to Hyperscreen. However, the Court cannot find, based upon the Arbitration Award, whether the issues of actual fraud and deceptive intent, as contemplated by § 523(a)(2)(A), were presented to the arbitration panel and were critical and

---

[3] The parties apply Florida law to the Alabama judgment. Alabama's standard for collateral estoppel does not appear to be materially different from Florida's standard, as applied to these facts. See Pierce v. Rummell, 535 So. 2d 594, 596 (Ala. 1988).

6

necessary to the final determinations made in the Arbitration Award.[4]  Thus, collateral estoppel does not apply to these federal bankruptcy questions, which are addressed below.

**B.     *Actual Fraud***

Section 523(a)(2)(A) of the Bankruptcy Code "sets forth three separate grounds for non-dischargeability: false pretenses, a false representation, and actual fraud." In re Lloyd, 549 B.R. 282, 291 (Bankr. M.D. Fla. 2016).  "Actual fraud precluding discharge consists of any deceit, artifice, trick, or design . . . used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." In re Howard, 261 B.R. 513, 517 (Bankr. M.D. Fla. 2001); 4 *Collier on Bankruptcy* ¶ 523.08[1][e] (16th ed. 2017).  "Proof of fraud in cases involving unfulfilled promises requires a plaintiff to prove that when a defendant made promises, he knew he could not fulfill them or had no intention of fulfilling them." In re Pupello, 281 B.R. 763, 766 (Bankr. M.D. Fla. 2002).

Put more succinctly, to prevail under § 523(a)(2)(A), the plaintiff must prove, by the preponderance of the evidence,[5] that:  1) the debtor made a false representation, or engaged in other materially deceptive conduct, with intent to deceive the creditor; 2) the creditor (or other relevant party) relied on the misrepresentation / deceptive conduct; 3) the reliance was reasonably justified under the circumstances; and 4) the reliant sustained a loss as a result of the fraud/deception.  See Lloyd, 549 B.R. at 291-92 (citing SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998)); In Re Roberts-Dude, 597 Fed. App'x 615, 617 (11th Cir. 2015).

---

[4] The Arbitration Award also found, without analysis, a fiduciary duty owed by the Defendants.  It is unclear on what facts or law the arbitration panel determined that a fiduciary duty was owed.  Regardless, the Arbitration Award did not find a fiduciary capacity as that term is used in § 523 of the Bankruptcy Code nor do there appear to be any facts to support such an argument.  Appropriately, the Plaintiff does not advocate for an exception to discharge under § 523(a)(4).

[5] Grogan v. Garner, 498 U.S. 279, 291 (1991) ("For these reasons, we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard.").

Here, while the promise to assign the Wyndham revenue was not memorialized in any form, not even an email, the Court accepts the Arbitration Award's finding that such a promise was made. Two hurdles, however, remain for the Plaintiff: 1) proving the promise was made with deceptive intent at the time (or with no intention of fulfilling the promise) and 2) proving the Plaintiff justifiably relied on the deceptive promise.

As to the Plaintiff's first hurdle, the Plaintiff points out that Claudia Kenny and Conlon gave testimony, on cross exam, that they never intended to assign the Wyndham revenue to Hyperscreen. The Plaintiff relies on this testimony, in conjunction with Arbitration Award's finding that a promise was made, in order to arrive at the ultimate finding of actual fraud. This argument is problematic. The testimony from Claudia Kenney and Conlon that they never intended to assign the revenue was given in the context of their broader testimony that no promise to assign the revenue was ever made. However, the Court is not persuaded that the Defendants ever acted with fraudulent or deceptive intent. Absent such intent, the Plaintiff's claim must fail.

Turning to the Plaintiff's second hurdle, even assuming arguendo that the Plaintiff proved deceptive intent, the Court concludes the Plaintiff did not justifiably rely on the promise to assign the Wyndham revenue. See Field v. Mans, 516 U.S. 59, 74-75 (1995) ("[W]e hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance."); Argento v. Cahill (In re Cahill), 2017 WL 713565, at *7 (Bankr. E.D.N.Y. Feb. 22, 2017) ("[W]hen a misrepresentation is present under any of the three types of fraud outlined in § 523(a)(2)(A), reliance must also be shown.").

For a creditor to justifiably rely on a debtor's misrepresentation, under § 523(a)(2)(A), the creditor's "conduct must not be so utterly unreasonable, in the light of the information apparent" at the time, "that the law may properly say that [the] loss is [the creditor's] own responsibility." Stewart Title Guar. Co. v. Roberts-Dude, 497 B.R. 143, 151 (S.D. Fla. 2013), aff'd, 597 Fed.

8

App'x 615 (11th Cir. 2015). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Field, 516 U.S. at 71.

The Court finds the following facts pertinent to the issue of justifiable reliance: a) the Operating Agreement was drafted by the Plaintiff's attorneys; b) the Operating Agreement does not mention the Wyndham revenue; c) there is no documentary evidence demonstrating negotiations concerning the Wyndham revenue; and d) the promise to assign the Wyndham revenue was not memorialized in any form. Based on this and the totality of the evidence, the Court finds and concludes that the Plaintiff did not justifiably rely on the promise to assign the Wyndham revenue when it agreed to engage with the Defendants. Given that the negotiations spanned the better part of a year and that all parties are sophisticated businesspeople, justifiable reliance requires something more than a mere onetime oral conversation concerning the Wyndham revenue. It strains credulity to believe the Plaintiff relied so heavily on this promise, as Bryant contends, yet failed to have its attorneys incorporate the promise into the Operating Agreement and further failed to make any documentary evidence of the negotiations leading up to the promise. The Court finds that the evidence conclusively shows unjustifiable conduct on the part of the Plaintiff that is sufficient to say the loss of the Wyndham revenue is the Plaintiff's own responsibility. To the extent there was any reliance by the Plaintiff, this reliance was not justified under these circumstances here. The failure to prove justifiable reliance is fatal to a claim under § 523(a)(2)(A). Stewart Title, 497 B.R. at 150.

The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.